UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Martha A. Dowling, et al.,**

    **Plaintiffs,**

**-V-**                                                                                                    Case No. 2:05-cv-049
                                                                                                         JUDGE SMITH
                                                                                                         Magistrate Judge King

**Select Portfolio Servicing, Inc.**
**fka Fairbanks Capital Corp., et al.,**

    **Defendants.**

**OPINION AND ORDER**

Plaintiff asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and state law, arguing, *inter alia,* that defendants wrongfully imposed and attempted to collect unlawful debts with respect to home mortgages. Defendants Lerner, Sampson & Rothfess, LPA ("Lerner"), as well as John D. Clunk, Esq. and Anthony Paisley, Esq., move to dismiss under Fed. R. Civ P. 12(b)(6). For the reasons that follow the Court grants Clunk and Paisley's motion to dismiss in part and denies it in part. The Court denies Lerner's motion to dismiss.

**I. Facts**

**A. Parties**

Plaintiff Martha Dowling is an individual citizen who lives in Newark, Ohio. Plaintiff

Cheryl March is an individual citizen who lives in Zanesville, Ohio.

Defendant Select Portfolio Servicing, Inc. ("Select") is a Utah corporation formerly known as Fairbanks Capital Corp. Select is a wholly-owned subsidiary operated and controlled by defendant Fairbanks Capital Holding Corporation ("Fairbanks"), a Delaware corporation.

Defendant Lerner is a law firm with offices located in Cincinnati, Ohio. Defendants Clunk and Paisley are attorneys at law. Fairbanks retained Lerner, as well as Clunk and Paisley, to engage in debt collection activities and the prosecution of civil foreclosure actions.

### B. Background

Select and Fairbanks operate in concert for the purpose of collecting, enforcing and processing consumer payment of residential mortgage loans under contracts with real estate investment trusts ("REITs"). As of the end of 2002, Fairbanks was one of the nation's largest loan servicers, collecting on a mortgage loan portfolio of over one-half million mortgages with a face value totaling almost $50 billion.

### C. Servicing of Dowling's mortgage loan

Plaintiff Dowling lived at 165 Linden Avenue in Newark, Ohio during the relevant period. Select serviced a residential mortgage loan in the principal amount of $68,000, which Dowling and her husband consummated on March 31, 1998, during the period between September 1, 1999 and March 24, 2004. The Dowlings' loan was not set up with an escrow for the payment of real estate taxes and homeowner's insurance. Rather, the Dowlings were responsible for obtaining and maintaining homeowner's insurance at their separate cost, and for paying their real estate taxes

directly to the Licking County Treasurer. Throughout the relevant period, the Dowlings maintained homeowner's insurance and paid real estate taxes as required.

In a notice dated September 14, 1999, Select charged the Dowling's account with an "escrow advance" of $2,110.88 to cover "distributed funds" in "unapplied balance." "Unapplied balance" was Select's designation for funds held in "suspense" for later application at Select's direction while interest charges continued to accrue on the amounts claimed to be owed.

In two Western Union "demand letters" dated September 17, 1999, Select demanded immediate payment of an alleged default of $5,553.39, without itemization, although Select had not claimed any amounts were past due in the monthly statement it mailed to the Dowlings three days earlier. The Dowlings complained to Select's Salt Lake City, Utah office by telephone. In response, Select mailed the Dowlings a loan history and payoff statement which demanded fees and payment of interest-bearing escrow advances for taxes and insurance coverage for which the Dowlings had already separately paid. Afterwards, Select applied portions of the Dowling's mortgage payments against its $2,110.58 escrow advance charge and "property preservation" fees it began imposing.

On February 28, 2000, Select caused defendants Clunk and Paisley to file a complaint in foreclosure against the Dowlings in the Licking County Common Pleas Court. On April 11, 2000, the Dowlings filed a petition for relief under Chapter 13 of the Bankruptcy Code. Select, through Clunk and Paisley, filed a proof of claim in the bankruptcy proceeding falsely claiming that the Dowlings owed Select $10,505.97 of "accrued charges" in addition to the loan principal and accrued interest. The bankruptcy court confirmed the Dowling's Chapter 13 Plan on June 16, 2000. The Plan required the Dowlings to pay Select $10,785,69 in accrued charges over the sixty-month life of the Plan.

On November 4, 2000, while the Dowlings were out walking with their daughter, a car struck the family. Mr. Dowling was killed, and Mrs. Dowling and her daughter were significantly injured. Dowling avers that as a result she fell behind in her obligations under the Chapter 13 Plan. On January 28, 2002, Select requested that the bankruptcy court lift the stay to allow Select to proceed with its foreclosure action. The bankruptcy court denied Select's request.

On March 22, 2002, Dowling used the benefits from her husband's life insurance policy to pay the remainder owed under the Chapter 13 Plan in one lump sum. Afterwards, Dowling directly paid Select an additional $6000 to assure satisfaction of all scheduled monthly payments that may have or did fall during the life of the Chapter 13 Plan. Nonetheless, on May 8, 2002, Select, though Clunk and Paisley, sought and obtained a judgment entry of foreclosure against the Dowling home. On June 19, 2002, the bankruptcy court entered an order discharging Dowling "from all debts provided for by the plan or disallowed" and prohibiting creditors from "attempting to collect any debt that has been discharged in this case."

Dowling asserts that Select continued to charge her for amounts that were discharged in the bankruptcy proceeding. Select also continued to falsely charge Dowling for escrow advances and and an alleged late payment. On March 22, 2004, Select transferred the servicing of Dowling's loan to Linton Loan Servicing. Dowling contends that Select charged and collected more than $15,000 in unlawful debt from her.

### D.  Servicing of March's mortgage loan

March refinanced her home in 1997 through a $56,000 loan from Contimortgage Corporation. The loan agreement exempted March from prepaying or escrowing annual premium

4

payments for fire and hazard insurance on her home.  March has always maintained and paid for homeowner's insurance locally.  March paid about $663 annually for insurance which included homeowner's coverage.

Select began servicing March's mortgage loan in July 2000.  Select immediately increased March's monthly payments from $505.99 to $589.32.  The increase allegedly constituted a pro-rata share of the cost of fire and hazard insurance that Select had force-placed because March allegedly neglected to maintain insurance as required under the loan agreement.

March contacted Select and provided it with proof of insurance on several occasions, to no avail.  At times the Select employee would represent that the problem would be corrected.

Select began to impose and collect late fees and other delinquency-related charges from the regular $505.99 payments March tendered each month.  Select diverted the payments March tendered for principal and interest to its own "suspense account" because March was not paying the forced-place insurance charge that Select demanded.

Eventually, Select falsely reported that March was delinquent on her home mortgage to credit reporting agencies.  Select also began to send March delinquency notices and collection letters.

On January 24, 2001 Select caused Lerner to file a complaint in foreclosure against March in the Muskingum County Court of Common Pleas.  The action was brought on behalf of M&T Bank, which was not then the actual owner of the mortgage and note.  A week later, Select directed Lerner to dismiss the action without prejudice.  Select caused Lerner to re-file the foreclosure complaint on April 5, 2001.  March obtained counsel and answered the complaint.  On July 24, 2001, March, through counsel, served proof of insurance on M&T Bank's counsel.  Select rejected

the proof, and fraudulently represented, for the first time, that the lapse in insurance coverage occurred at some time prior to the time when Select began servicing the loan. In April 2002, Select caused Lerner to seek foreclosure by summary judgment.

March sought to refinance her home with another lender in an attempt to end all dealings with Select. In April 2003, counsel for March convinced a Zanesville area bank to closely review March and the circumstances of her loan. The bank eventually agreed to refinance March's home and M&T Bank's second foreclosure complaint was thereafter dismissed by agreement and without compromise or release of liability as to March's claims against Select.

## II.  Motion to Dismiss

A motion to dismiss for failure to state a claim "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). All well-pleaded allegation must be taken as true and be construed most favorably toward the non-movant. Schuer v. Rhodes, 416 U.S. 232, 236 (1974). A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 857, 858 (6th Cir. 1976). Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement

of the claim showing that the pleader is entitled to relief." 5A Wright & Miller, Federal Practice and Procedure § 1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. Id.

On the other hand, more than bare assertions of legal conclusions is required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (emphasis in original, quotes omitted).

> "[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

Id.

### III. Discussion

### A. Clunk and Paisley's motion to dismiss

### 1. Federal RICO

Clunk and Paisley move to dismiss Dowling's RICO claim against them for failure to state a claim upon which relief can be granted. They first argue that Dowling's RICO claim is subject to dismissal because it does not satisfy this Court's Standing Order on RICO. The First and Fifth Circuits have upheld the use of RICO standing orders, while the Second and Ninth Circuits have indicated that such orders cannot form the basis for dismissing a RICO claim to the extent they exceed the requirements of Fed. R. Civ. P. 8(a) and 9(b). See Wagh v. Metris Direct, Inc., 348 F.3d

1102, 1108-09 (9th Cir. 2003)(citing cases).   This Court's RICO order is a discretionary administrative tool.  It does not supplant the standards set forth in Fed. R. Civ. P. 8(a) and 9(b).  In any event, the Court has not issued the order in the instant case, and it therefore has no force or effect in this action.  In sum, the Court will not dismiss Dowling's RICO claims on the basis that they do not comport with the Court's standing RICO order.

Clunk and Paisley next argue that Dowling has failed to plead facts sufficient to satisfy various elements of a RICO claim.  Dowling asserts her RICO claims under 18 U.S.C. § 1962, which provides in part as follows:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c),(d).  The elements predominant in a §1962(c) RICO claim are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity. Salinas v. U.S., 522 U.S. 52, 62 (1997); see Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).  To be liable under § 1962(c), a person must participate in the "operation or management" of the corrupt enterprise's affairs. Reves v. Ernst & Young, 507 U.S. 170, 179 (1993).

Clunk and Dowling contend that Dowling has failed to show that the filing of one foreclosure action and one proof of claim in a bankruptcy proceeding amounts to a " pattern of racketeering activity."  Clunk and Paisley additionally argue that Dowling fails to allege that they were part of an distinct "enterprise"  Lastly, Clunk and Paisley maintain that Dowling has failed to allege that they participated in the operation or management of the enterprise.

Dowling asserts that the above elements do not apply to her RICO claim against Clunk and

Paisley because her claim against them is based upon conspiracy under § 1962(d) rather than § 1962(c). A claim for conspiracy under § 1962(d) does not require proof that the defendant committed or agreed to commit two or more predicate acts. Salinas, 522 U.S. at 61-66. Violation of § 1962(c) is not a prerequisite to a violation of § 1962(d). Id. at 65; Smith v. Berg,, 247 F.3d 532, 537 (3rd Cir. 2001) . "[A] defendant may be held liable for a conspiracy to violate § 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." Smith, 247 F.3d at 538. Stated otherwise, to liable under § 1962(d), "[o]ne must knowingly perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner." Brouwer v. Raffensperger, Hughes & Co., 199 F.3d 961, 967 (7th Cir. 2000).

Dowlings' essentially allegea that Clunk and Paisley they knowingly agreed to perform collection services on behalf of Select. Applying the above standard, the Court concludes that Dowling has pleaded sufficient facts to state a claim under § 1962(d) against Clunk and Paisley.

Clunk and Paisley further argue in their reply brief that a claim under § 1962(d) fails when the underlying claim under § 1962(c) is without merit. See BancOklahoma Mortg. v. Capital Title Co., 194 F.3d 1089, 1103 (10th Cir. 1999). Be that as it may, Clunk and Paisley have not attempted to show that Dowling's § 1962(c) claims against Select and Fairbanks are deficient.

For the above reasons, the Court denies Clunk and Paisley's motion to dismiss Dowling's RICO claims against them.

### 2. Ohio RICO

Clunk and Paisley also seek dismissal of Dowling's claim brought under the Ohio Corrupt

Practices Act, Ohio Rev. Code § 2923.34 ("Ohio RICO").  Clunk and Paisley advance two basic arguments for dismissal of Dowling's Ohio RICO claim: (1) Dowling has failed to plead a predicate act that constitutes a felony; and (2) Dowling's Ohio RICO claim is subject to dismissal on the same grounds as her federal RICO claim.

> Ohio's civil RICO provision states in part as follows:
>
> Any person who is injured or threatened with injury by a violation of section 2923.32 of the Revised Code may institute a civil proceeding in an appropriate court seeking relief from any person whose conduct violated or allegedly violated section 2923.32 of the Revised Code or who conspired or allegedly conspired to violate that section, . . .

Ohio Rev. Code § 2923.34(B).  Ohio Rev. Code § 2923.32 provides in pertinent part:

> No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.

Ohio Rev. Code § 2923.32(A)(1).  Ohio RICO defines "corrupt activity" as, *inter alia,* violation of specific criminal statutes.  Ohio Rev. Code § 2923.31(I).

For the proposition that Ohio RICO requires at least one predicate act to be a felony, Clunk and Paisley rely on Roe v. Franklin Cty., 109 Ohio App.3d 722, 781 (1996).  In Roe, a father and daughter filed a civil action against Franklin County and the Franklin County Children Services Agency ("FCCS"), alleging that FCCS employees wrongfully pursued child abuse allegations against the father.  The plaintiffs in Roe asserted claims under both federal and Ohio RICO statutes, basing their claims on the predicate offense of "coercion" in violation of Ohio Rev. Code § 2905.12.  The trial court dismissed the plaintiffs claims, and plaintiffs appealed.

The court of appeals affirmed the trial court's dismissal of plaintiffs' RICO claims.  Roe, 109 Ohio App.3d at 782-83.  It held that coercion could not support the RICO claims because

coercion is a misdemeanor of the second degree, and both federal and Ohio RICO statutes require that at least one of the predicate acts be a felony. Id. The court of appeals reached this conclusion upon examining Ohio RICO's definition of "pattern of corrupt activity", which states in part as follows:

> For the purposes of the criminal penalties that may be imposed pursuant to section 2923.32 of the Revised Code, *at least one of the incidents forming the pattern shall constitute a felony under the laws of this state* or, if committed in violation of the laws of the United States or of any other state, shall constitute a felony under the law of the United States or the other state and would be a criminal offense under the law of this state if committed in this state.

Roe, 109 Ohio App.3d at 783 n.6 (emphasis in original).

Plaintiff argues that the statutory language upon which the court in Roe relied is limited to criminal cases. The Court, however, need not reach the issue of whether Roe correctly interpreted an Ohio statute because, in the instant case, Dowling has alleged predicate offenses that satisfy both Ohio Rev. Code § 2923.31(E) as well as § 2923.31(I). For example, Dowling asserts in her complaint the enterprise engaged in the corrupt activity of perjury in violation of Ohio Rev. Code § 2921.11 by knowingly making false statements as to material facts under oath in connection with official proceedings. Perjury is a felony and is specifically listed as a "corrupt activity" in Ohio Rev. Code § 2923.31(I)(2)(a). In addition, Dowling alleges that the enterprise engaged in mail and wire fraud, which are also corrupt activities under Ohio Rev. Code § 2923.31(I)(1).[1] For these reasons, the Court rejects Clunk and Paisley's argument that Dowling's Ohio RICO claim is subject to dismissal because Dowling failed to plead at least one felony predicate act.

To the extent Clunk and Paisley argue that they cannot be liable under Ohio RICO because

---

[1] Ohio Rev. Code § 2923.31(I)(1) refers to 18 U.S.C. § 1961(1)(B), which lists mail and wire fraud as racketeering activities.

11

they did not personally commit predicate acts, the Court finds such an argument to be without merit in light of Salinas. There is simply no reason to believe that Ohio courts would not apply the reasoning of Salinas to a conspiracy claim brought under Ohio Rev. Code. § 2923.34(B).

Clunk and Paisley also contend that Dowling's Ohio RICO claim is subject to dismissal on the same grounds as her federal RICO claim. Inasmuch as the Court has rejected Clunk and Paisley's grounds for dismissing Dowling's federal RICO claim, it follows that their argument on this point is not well-taken.

For the above reasons, the Court concludes that Clunk and Paisley are not entitled to dismissal of Dowling's Ohio RICO claim.

### 3. Fraud

Clunk and Paisley next argue that Dowling's common law fraud claim[2] is subject to dismissal because Dowling failed to plead it with the required degree of particularity, and because Dowling failed to plead reliance. Dowling maintains that she has pleaded her fraud claim with sufficient particularity, and that she need not plead reliance when the misrepresentation was made by adverse counsel.[3]

Fed. R. Civ. P. 9(b) provides in pertinent part: "In all averments of fraud or mistake, the

---

[2] Clunk and Paisley's arguments in this instance seem to be directed at Dowling's claim for common law fraud, as opposed to the underlying predicate acts of mail or wire fraud asserted in connection with RICO. That is, Clunk and Paisley do not appear to argue that Dowling failed to plead mail or wire fraud claims against Select and Fairbanks with the required degree of particularity. The matter is somewhat unclear, however, as Clunk and Paisley refer to RICO case law in challenging Dowling's fraud claim. In any event, it bears repeating that under Salinas Dowling is not required to allege that Clunk and Paisley personally committed mail or wire fraud for purposes of her RICO claim. To the extent Clunk and Paisley do challenge Dowling's assertion of mail and wire fraud against Select and Fairbanks, the Court grants Dowling leave to amend her complaint to plead those assertions with greater specificity to the extent it is possible to do so within the bounds of Fed. R. Civ. P. 11.

[3] Dowling does not cite authority for the latter proposition.

12

circumstances constituting fraud or mistake shall be stated with particularity." "To satisfy the requirements of this rule, the plaintiff must allege specifically times, places, contents and victims of the underlying fraud." Vild v. Visconsi, 956 F.2d 560, 567 (6th Cir. 1992). Moreover, the plaintiff must plead the element of reliance with particularity. See Evans v. Pearson Enterprises, Inc., F.3d , , 2006 WL 126805 (6th Cir. Jan. 19, 2006); VanDenBroeck v. Commonpoint Mortg. Co., 210 F.3d 696, 701 (6th Cir. 2000).

The Court finds that Dowling's allegation of fraud against Clunk and Paisley do not meet the requirements of Rule 9(b) as set forth above. Nonetheless, it would be improper to dismiss Dowling's fraud claim against Clunk and Paisley would not be proper at this juncture without first affording Dowling the opportunity to amend her complaint to the extent she can do so within the requirements of Fed. R. Civ. P. 11. See Coffey v. Foamex L.P., 2 F.3d 157, 162 (6th Cir. 1993).

### 4. Statute of imitations

Clunk and Paisley also seek dismissal of Dowling's fraud, negligence and intentional interference claims on the ground that they are barred by the one-year statute of limitations for legal malpractice actions. Dowling is not proceeding under a theory of legal malpractice, and the Court fails to see how the statute of limitations for such a claim has any applicability to this case. The Court therefore declines to dismiss any of Dowling's claims on this basis.

### 5. Attorney immunity

Clunk and Paisley next argue that they are absolutely immune with respect to Dowling's claims because they acted as attorneys representing a client in good faith. Lerner raises the same

argument with respect to March's claims. Dowling does not respond to Clunk and Paisley's argument on this point; however, March provides a detailed response to Lerner's motion.

> Under Ohio law, attorneys enjoy immunity from liability to third persons arising from acts performed in good faith on behalf of, and with the knowledge of, their clients. There is no immunity, however, where attorneys act maliciously. Scholler v. Scholler, 10 Ohio St.3d 98, 462 N.E.2d 158, 163 (1984).

Vector Research, Inc, v. Howard & Howard Attys. P.C., 76 F.3d 692, 700 (6th Cir. 1996). In such a case, malice "may be averred generally." Fed. R. Civ. P. 9(b); Vector Research, 76 F.3d at 700.

The Vector Research case involved both federal and state law claims. Significantly, the court in Vector Research discussed the Ohio common law attorney immunity only in connection with the state law claims. By implication, therefore, the Ohio common law attorney immunity has no bearing on March's or Dowling's federal claims.

The Court finds that even under the liberal standard of Fed. R. Civ. P. 8, March and Dowling have failed to plead that Lerner, Clunk and Paisley acted with malice. Nevertheless, the Court cannot say at this juncture that plaintiff are unable to plead malice. See Vector Research, 76 F.3d at 700. The Court therefore declines to dismiss plaintiffs' state law claims at this juncture on the ground of attorney immunity, and instead grants plaintiffs leave to amend their complaint to assert malice within the bounds of Fed. R. Civ. P. 11.

### 6. Collateral estoppel

Clunk and Paisley also contend that Dowling's claims should be dismissed under the doctrine of collateral estoppel. The doctrine of collateral estoppel or issue preclusion bars relitigation of an issue when:

(1) the issue in the subsequent litigation is identical to that resolved in the earlier

14

litigation,

(2) the issue was actually litigated and decided in the prior action,

(3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation,

(4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and

(5) the party to be estopped had a full and fair opportunity to litigate the issue.

Santana-Albarran v. Ashcroft, 393 F.3d 699, 704 (6th Cir.2005).

Clunk and Paisley argue that any inaccuracy in the foreclosure complaint and bankruptcy proof of claim were necessarily and actually litigated in those prior proceedings. They have not, however, come forward with any proof that those issues were actually litigated  For this reason, collateral estoppel does not bar litigation of the accuracy of the foreclosure complaint or the bankruptcy proof of claim.

### 7. RESPA

Dowling concedes that her claims under RESPA and Ohio Rev. Code § 1321.57 do not apply to Clunk and Paisley. The Court will dismiss these claims as to Clunk and Paisley.

### B. Lerner's motion to dismiss

Lerner advances two ground for dismissal of March's claims: (1) absolute attorney immunity under Ohio law, and (2) the complaint fails to plead conspiracy with sufficient specificity. The Court has already addressed the issue of attorney immunity, and will therefore proceed to examine whether March has adequately pleaded conspiracy.

Lerner contends that March has not pleaded her RICO conspiracy claim with requisite specificity. In making this argument, Lerner relies on case law involving claims for civil conspiracy. See Farhat v. Jopke, 370 F.3d 580, 599 (6th Cir. 2004)(civil conspiracy must be pleaded with "some specificity,"); Eva v. Midwest National Mortg. Banc, Inc., 143 F. Supp.2d 862, 898 (N.D. Ohio 2001)(analyzing elements of Ohio civil conspiracy claim separately from RICO conspiracy claims).

The Court finds that this issue must be addressed by the application of federal law. Underlying predicate acts of mail and wire fraud must be pleaded with particularity. Blount Financial Service v. Walter E. Heller & Co., 819 F.2d 151 (6th Cir.1987); see also Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1362 (10th Cir.1989); Lum v. Bank of Am., 361 F.3d 217, 220 (3d Cir.2004). The Court is, however, unaware of any authority from the United States Supreme Court or the Sixth Circuit Court of Appeals to the effect that RICO conspiracy claims under 18 U.S.C. § 1962(d) must also be pleaded with particularity. See Robbins v. Wilkie, 300 F.3d 1208, 1211 (10th Cir. 2002)(declining to apply Rule 9(b) particularity requirement to damages element of RICO claim); see also Michael Goldsmith, Judicial Immunity for White-Collar Crime: The Ironic Demise of Civil RICO, 30 Harv. J. on Legis. 1, 18-22 (1993) (criticizing judicial attempts at RICO reform through improper heightened pleading requirements). One federal appellate court has refused to apply the Rule 9(b) particularity requirement to such a claim, stating that the pleading of RICO conspiracy was governed by Rule 8. Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir.1990).[4] Significantly, Rule 9 does not specify that conspiracy must be pleaded with particularity. The Court therefore holds that Rule 8(a) governs the pleading of a RICO conspiracy claim.

---

[4] Nonetheless, to state a RICO conspiracy claim, the plaintiff must specifically allege the existence of an agreement. Hecht, 897 F.2d at 25.

The elements of a claim for RICO conspiracy under 18 U.S.C. § 1962(d) are straightforward: "[A] defendant may be held liable for a conspiracy to violate § 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." Smith, 247 F.3d at 538. Similarly, it has been stated that to be liable under § 1962(d), "[o]ne must knowingly perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner." Brouwer, 199 F.3d at 967.

As was the case with Clunk and Paisley, Lerner does not cogently challenge March's pleading of her underlying § 1962(c) claim against Select and Fairbanks. March essentially alleges that Lerner knowingly agreed to perform collection services to facilitate the activities those who operated an enterprise in an illegal manner. The Court finds that March has adequately pleaded a RICO conspiracy claim against Lerner.

For the above reasons, the Court denies Lerner's motion to dismiss.

## IV. Disposition

Based on the above, the Court **GRANTS** Clunk and Paisley's motion to dismiss in part and **DENIES** it in part.  The Court dismisses Dowling's claims under RESPA and Ohio Rev. Code § 1321.57 against Clunk and Paisley.  All other claims asserted by Dowling remain pending.

The Court **DENIES** Lerner's motion to dismiss.

Plaintiffs shall file any amended complaint within thirty days after the date of this order.

The Clerk shall remove Doc. 11 and Doc. 13 from the Court's pending motions list.

      **IT IS SO ORDERED.**

                                          **/s/ George C. Smith**
                                          **GEORGE C. SMITH, JUDGE**
                                          **UNITED STATES DISTRICT COURT**