IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARTHA A. DOWLING, *et al.* : | |
| : | |
| Plaintiffs, : | Case No. 2:05-CV-0049 |
| : | |
| v. : | JUDGE ALGENON L. MARBLEY |
| : | |
| SELECT PORTFOLIO : | Magistrate Judge King |
| SERVICING INC., *et al.* : | |
| : | |
| Defendants. : | |

### OPINION & ORDER

### I. INTRODUCTION

This matter comes before the Court on an Amended Motion for Summary Judgment filed by Defendants Select Portfolio Servicing Inc, f/k/a Fairbanks Capital Corporation and Select Portfolio Servicing Holding Corporation, (collectively, "Defendants"), on the claims filed by Cheryl K. March ("Plaintiff" or "March").  For the reasons set forth herein, this Court **GRANTS** Defendants' Motion for Summary Judgment.

### II. BACKGROUND

#### a. Facts

Plaintiff brought action against Defendants, under several statutes, for Defendants' alleged wrongful servicing of Plaintiff's residential mortgage loan.  Defendants assert that Plaintiff is a member of a class action group that settled with Defendants over the very claims Plaintiff now brings before the Court, and is, therefore, barred from filing suit based on the terms of the settlement agreement and principles of *res judicata*.

**Loan Servicing**

In 1997, Plaintiff refinanced her Zanesville, Ohio home through a $56,000 loan from ContiMortgage Corporation, using the same property as security for the loan (hereinafter, "Mortgage Loan"). The Mortgage Loan exempted March from prepaying or escrowing annual premium payments for fire and hazard protection on her home because March always had retained homeowner's insurance locally. Defendant Select Portfolio Servicing Inc., ("SPS"), under its former name Fairbanks Capital Corp. ("Fairbanks") began servicing March's Mortgage Loan for ContiMortgage in or around July 2000. Subsequently, SPS increased March's monthly payment from $505.99 to $589.32 to include the cost of fire and hazard insurance SPS had force-placed, because it alleged that March neglected to maintain insurance as required under the Mortgage Loan. March claims that this representation was in all regards false and in error, in that at no time had she ever allowed her insurance coverage to lapse.

Using the toll-free service number provided by SPS, March contacted SPS on July 24, 2000, explained her insurance status and exemption from the force-placed charges, and claimed that she was not responsible for the payment of the insurance. March claims that the customer service agent for SPS agreed that the insurance charge was an error and promised that the SPS escrow section would rectify the matter within six to eight weeks after March provided verification of insurance coverage. SPS, however, continued to request payment for forced-placed insurance, in addition to the principle and interest payments. March continued to pay the principle and interest only. SPS allocated portions of March's principal and interest payments to the forced-placed insurance charges, despite March's assertion that she was never responsible for such charges.

Consequently, SPS labeled March's Mortgage Loan as delinquent, and assessed late fees and other delinquency related charges, which were also collected from the principle and interest payments March continued to pay.  March began receiving collection notices in the mail and, eventually, SPS reported to credit reporting agencies that March was delinquent on her home mortgage loan.  March again contacted SPS via its toll-free customer number to explain the forced-placed insurance mistake and faxed in proof of insurance, but she continued to receive delinquency notices.  As a result, a foreclosure action was commenced on January 24, 2001, which was voluntarily dismissed without prejudice.

As of February 2001, SPS began returning March's regular principal and interest payments.  On March 13, 2001, March again called SPS's customer number and was directed to the Loan Servicing Center where she reviewed the account history and was asked again to fax in proof of insurance.  March once again sent proof of insurance, this time via certified mail.  Nonetheless, a second foreclosure action was commenced on April 5, 2001.  March obtained counsel who provided SPS's counsel with proof of insurance, but SPS claimed – supposedly for the first time – that the alleged lapse in insurance coverage had occurred prior to SPS's acquiring responsibility for servicing the loan in July 2000.

In an attempt to end all dealings with SPS and to prevent the foreclosure action, March refinanced the Mortgage Loan with a Zanesville area bank, and the foreclosure action was dismissed.  March filed this lawsuit against Defendants for the alleged wrongful servicing of her Mortgage Loan, which occurred between July 2000 and April 2001.

**Curry Class Action**

On May 15, 2003, a class action was filed in the Massachusetts Federal District Court, captioned *Alanna L. Curry, individually and on behalf of all other similarly situated v. Fairbanks Capital Corporation*, C.V. No. 03-10895-DPW ("Curry Class Action").  On December 10, 2003, the Honorable Douglas P. Woodlock of the United States District Court for the District of Massachusetts entered an Order in the Curry Class Action granting preliminary approval of a nationwide class action settlement of servicing disputes with SPS and a Preliminary Injunction staying all servicing disputes between SPS and class members (hereinafter, the "Curry Preliminary Injunction").

The settlement in the Curry Class Action, executed as of November 14, 2003, was part of a global resolution of private suits and class actions and investigations by the Federal Trade Commission and the Department of Housing and Urban Authority (hereinafter, "Curry Settlement Agreement").  On or about May 13, 2004, the Final Order certifying the Class and approving the final settlement was entered (hereinafter, "Curry Final Order").  The Curry Final Order approving the Curry Settlement Agreement found that members of the certified class had received sufficient notice of their rights in connection with the lawsuit.  As approved by the court, the nationwide class action included SPS's consumers whose loans were serviced at any time from January 1, 1999 to December 10, 2004 (hereinafter, the "Curry Class Period").  The Class is specifically defined as follows:

> [A]ll persons, other than the Excluded Persons, whose loans were serviced by SPS in the [Curry] Class Period, and:
>
> (a) whose loans were (i) in Default or treated as being in Default by Fairbanks and (A) who incurred or were assessed late feels and/or Default-Related fees including, without limitation, fees denominated by Fairbanks as "corporate" advances, or (B)

who were affected by Default-Related conduct; and/or (ii) ones in which the Member incurred or was assessed payment penalties . . .

The Curry Settlement Agreement defines "Default-Related" conduct as:

any and all acts, omissions, practices, conduct or behavior by Fairbanks or one of the Fairbanks-Related Parties that was taken at ay time with respect to a Serviced Loan that is or ever was in Default or treated by Fairbanks as being in Default, and, subject to the foregoing, shall include, but not be limited to those Servicing practices that are the subject of the [Curry Class Action]. . . .

The Curry Final Order also enjoined all class members from filing or pursuing any lawsuit in any jurisdiction based on, or relating to, the claims and causes of action or facts and circumstances relating to those in the Curry Class Action:

[A]ll Class members who have not timely excluded themselves from the Class, . . . are hereby enjoined from filing, commencing, prosecuting, intervening in, or participating as class members in, any lawsuit, arbitration, administrative complaint or similar contested proceeding against Fairbanks or a Fairbanks Releasee, in any jurisdiction, that is within the scope of the Released Claims or that is based on or relating to the claims or causes of action, or the facts and circumstances relating thereto, in the Curry Action.

Additionally, Curry Class Members specifically released SPS for any Covered Practice[1] and agreed that such release "shall specifically apply to bar any dispute about the Covered Practices and about the matters that are within the scope of the [Curry Settlement Agreement], whether, whenever and however each dispute or issue may arise or be raised" (hereinafter, the "Release").

Pursuant to the Class Notice sent to all putative class members, those persons who wished to "opt out" of the Curry Class Settlement were to have done so by April 9, 2004.

---

[1] Under the Curry Settlement Agreement, "Covered Practices" includes assessment of excess or improper forced-placed hazard insurance premiums and all related transactions or occurrences.

Affixed to the Curry Final Order is a list of persons/mortgagers who validly "opted-out" of the Curry Class Action in accordance with the requirements of the Curry Settlement Agreement and the applicable law. Plaintiff does not appear on such list. Defendants state that Notice and a Claim Form were mailed to Plaintiff at her home via first class mail on February 23, 2004; those forms were not returned for processing, nor were they returned as undeliverable.

The Curry Settlement Agreement provides that any class member who does not submit a timely notice of intent to opt out, shall be bound by the Curry Settlement Agreement and the Release. Members who failed to opt-out are limited to the relief specified in the Curry Settlement Agreement including participation in the $40 million "Redress Fund" or participation in the "Reverse and Reimburse Program." Members were instructed in the Curry Class Notice that, in order to participate in the Redress Fund, they were required to "fill out and return the enclosed claim form as soon as possible. It must be postmarked no later than April 24, 2004." Plaintiff did not return the required claim form, and thereby limited herself to the Reverse and Reimburse Program.

Defendants assert that the district court presiding over the Curry Class Action reserved "exclusive jurisdiction of all matters related to whether a Class Member . . . is excluded from the Class, whether because said Class Member submitted a Request for Exclusion that is not valid under the Settlement Agreement or otherwise." In addition, the Settlement Agreement also states that "(i)f the Court determines it does not have such jurisdiction or it does not exercise its

jurisdiction, the exclusive jurisdiction and venue for such action shall be in a court in the jurisdiction where Fairbanks has it principal place of business."[2]

### b. Procedural History

On January 28, 2005, March filed this action in federal court; she amended her complaint on April 2, 2006. Plaintiff's amended complaint alleges that she is entitled to judgment from Defendants based upon the wrongful servicing of her Mortgage Loan.

On September 20, 2005, Defendants filed a Motion for Summary Judgment on March's claims. March timely opposed that motion on October 24, 2005, and Defendants' reply was presented on November 11, 2005. In March 2006, Defendants filed a Motion to Amend its previously filed Motion for Summary Judgment, and upon receiving leave, filed an Amended Motion for Summary Judgment on April 20, 2006. Plaintiff submitted her Response in Opposition on July 11, 2006. Accordingly, Defendants' Motion is ripe for this Court's review.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see*

---

[2] Defendant SPS is a corporation created under the laws of Utah, having its principle place of business in Salk Lake City, Utah.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating motions for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In the case of cross-motions, the Court must "tak[e] care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft*, 929 F.2d at 248. The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388-89 (6th Cir. 1993). Significantly, in responding to a motion for summary judgment, however, the non-moving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

## IV.  ANALYSIS

Defendants move this Court for summary judgment on the basis that this Court lacks subject matter jurisdiction over Plaintiff's claims. Defendants argue that the Massachusetts Federal District Court retained jurisdiction over the Curry Class Action, of which Defendants claim Plaintiff is a Member, and enjoined Class Members from filing or commencing any action against SPS for conduct that was covered by the Curry Settlement Agreement and the Curry Final Order. Moreover, Defendants claim that March has not provided evidence that she

excluded herself as a member of the Curry Class Action, and as a result, March's claims are precluded by the Curry Class Action and barred by principles of *res judicata*.

### A. Jurisdiction

Defendants argue that Plaintiff's action cannot be maintained because only the Massachusetts District Court, and not this Court, has jurisdiction over the subject matter of the case. Defendants point to several sections of the Curry Final Order and Curry Settlement Agreement in support of their contention. This Court will review each.

First, in ¶ 49 of their Motion for Summary Judgment, Defendants quote the Curry Final Order to support their argument that this Court does not have jurisdiction:

> In the Curry Final Order, the Massachusetts District Court reserves "exclusive jurisdiction of all matters related to whether a Class Member . . . is excluded from the Class, whether because said Class Member submitted a Request for Exclusion that is not valid under the Settlement Agreement or otherwise." [Curry Final Order] p. 10, ¶ 19.

Defendants' use of this provision in the Curry Final Order is inappropriate because the quote is a complete misrepresentation of the actual provision in the Curry Final Order. Defendants used an ellipse over only four words, but they are four very important words. The actual language from the Curry Final Order is as follows:

> [T]he Court hereby retains exclusive jurisdiction of all matters related to whether a Class Member **listed on Exhibit A** is excluded from the Class, whether because said Class Member submitted a Request for Exclusion that is not valid under the Settlement Agreement or otherwise. (emphasis added).

Exhibit A is a list of all of the potential Curry Class Members who validly excluded themselves from the Class in accordance with the requirements of the Settlement Agreement. March is not on the list because, as she and Defendants are well aware, she did not submit an opt-out form. Therefore, the clause that Defendants cite in support of their argument that this Court lacks

jurisdiction over Plaintiff's claim, is completely irrelevant, and Defendants' inclusion of this provision – with the carefully placed ellipse – is misleading and improper.

Second, Defendants claim this Court lacks jurisdiction over Plaintiff's claims because the Curry Settlement Agreement states that: "the [Massachusetts District] Court shall retain jurisdiction over the interpretation, effectuation, enforcement, administration, and implementation of this [Settlement] Agreement and of any question, issue, proceeding or action regarding the effect the [Settlement] Agreement and the Settlement shall have."

While the Massachusetts Court has *retained* jurisdiction over the matter, it has not *divested* this Court from the jurisdiction Congress has statutorily granted federal courts.[3] As long as Plaintiff establishes proper jurisdiction in this Court, which she has done so pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1367, this Court may hear Plaintiff's claims.     Third,

---

[3] In light of the U.S. Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994), district courts are wise to state, in a dismissal order pursuant to a settlement agreement, that jurisdiction is being retained by such dismissing court. Such statement is necessary because, as the Supreme Court explained, enforcement of a settlement agreement, whether through award of damages or decree of specific performance, is more than a continuation of the dismissed suit and requires its own basis for jurisdiction. In other words, if there is a dispute over the settlement agreement (i.e., an alleged breach) the issue is one of contract law, subject to state law. If the district court no longer has subject matter jurisdiction – because a contract dispute is not a federal question, and the parties may not be diverse – the district court will not be able to enforce the agreement, unless, that is, it has retained jurisdiction.

Indeed, the *Kokkonen* Court explained that if the parties wish to provide for the dismissing court's enforcement of the agreement at produced a dismissal, they can seek to do so. "[T]he parties' compliance with the terms of the settlement contract (or the court's "retention of jurisdiction" over the settlement contract) may, in the court's discretion be one of the terms set forth in the order." *Id.* at 381. Absent such action, unless there is some independent basis for federal jurisdiction, enforcement of the settlement agreement is for state courts.

Without speculating the intent of the Massachusetts District Court, it is not unlikely that the Court retained jurisdiction over the instant matter, not in an effort to divest other courts of jurisdiction, but to ensure its own jurisdiction over the matter if necessary.

Defendants maintain that this Court does not have subject matter jurisdiction over Plaintiff's claim because the Settlement Agreement states that "(i)f the [Massachusetts District] Court determines it does not have such jurisdiction or it does not exercise its jurisdiction, the exclusive jurisdiction and venue for such action shall be in a court in the jurisdiction where Fairbanks has it principal place of business."  In other words, Defendants assert that this Court does not have jurisdiction over this matter because, should the Massachusetts District Court opt not to exercise jurisdiction over this action, the Utah courts have exclusive jurisdiction over this action.

  Once again, Defendants' argument is without merit.  The Massachusetts District Court has not determined that it does not have jurisdiction, nor that it does not wish to exercise its jurisdiction.  Under this provision, had Plaintiff brought her claims before the Massachusetts District Court, such Court may find that, pursuant to 28 U.S.C. 1404(a), and "[f]or the convenience of parties and witnesses, in the interest of justice" the case should be transferred to Utah, seeing that both parties contemplated such venue in the Curry Settlement Agreement.  Yet, such provision, which merely provides direction to the Massachusetts District Court in considering whether to exercise its jurisdiction, does not deprive this Court of its statutorily granted jurisdiction.  Plaintiff did not bring the present action before the Massachusetts District Court, and this Court is satisfied with Plaintiff's assertion of proper jurisdiction.  Private parties cannot defeat the subject matter jurisdiction  of federal courts by means of a [contract] clause, any more than they could, by the same means, *confer* such jurisdiction on this court in a case in which diversity or a federal question were lacking." *Licensed Practical Nurses v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 402-03 (S.D.N.Y. 2000); *see also Kerobo v. Southwestern Clean Fuels, Corp.* 285 F.3d 531 (6th Cir. 2002) (explaining that a forum-selection clause is a

contract element – which does not control a court's jurisdiction – and is only one of the factors to consider in a motion to transfer).

In sum, even though the Massachusetts District Court retained jurisdiction for either its court or a court located in Defendant SPS's principle place of business, this Court does not lose its jurisdiction over claims that properly come before it. In this case, Plaintiff has properly alleged that this Court does have subject matter jurisdiction over her claims pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1367. Therefore, Plaintiff's claims will not be dismissed, nor will Defendants be granted summary judgment, because of jurisdictional failures.

### B. Injunction Over Class Members

The Massachusetts District Court, in the Curry Final Order and pursuant to the All Writs Act,[4] Fed. R. Civ. P. 64, and the court's inherent equitable powers, extended its previously issued Curry Preliminary Injunction, in order to: (1) protect the Curry Settlement Agreement; (2) provide the full benefits of the Curry Settlement to the parties; and (3) protect the court's orders and jurisdiction. Specifically, the Curry Injunction provides:

> [A]ll Class Members . . . are hereby enjoined from filing, commencing, prosecuting, intervening in, or participating as class members in, any lawsuit, arbitration, administrative complaint or similar contested proceeding against Fairbanks or a Fairbanks Releasee, in any jurisdiction, that is within the scope of the Released Claims or that is based on or relating to the claims or causes of action, or the facts and circumstances relating hereto, in the Curry Action. This Injunction shall not apply to the Reserved Claims and Defenses or to any action taken to consummate or implement any settlement of any formal or informal lawsuit, claim or dispute involving a Class Member.

---

[4] The All Writs Act grants the federal courts the authority to issue injunctions where necessary in aid of their jurisdiction. 28 U.S.C. 1651(a).

The definition of "Reserved Claims" within the Curry Settlement Agreement states that nothing in the "Released Claims" shall prevent a Settlement Class Member from seeking relief or pursing a claim that *does not arise out of or in connection with* Defendants' servicing on a Serviced Loan.

Defendants argue that they are entitled to judgment as a matter of law because the Curry Injunction, which was fully incorporated to the Curry Final Order, prevents Plaintiff from filing or commencing an action against SPS for conduct that was covered by the Curry Settlement Agreement and Final Order.  Defendants also assert that Plaintiff was a member of the Class Action, thus her claims have been adjudicated and she is subject to the effect of the Curry Final Order, which includes the Curry Injunction.

Plaintiff essentially offers no argument as to why this Court should not honor the injunction provision in the Curry Settlement Agreement and Final Order.  Plaintiff appears to confuse the doctrines of jurisdiction and injunctive relief, and continues to assert that this Court has jurisdiction to hear her claim.  Plaintiff maintains that Court has statutory subject matter jurisdiction over her federal and state law claims in addition to personal jurisdiction over all parties, that neither the All Writ's Act nor the Massachusetts District Court can override the jurisdictional grants established by Congress.  She also states that she has been "entirely passive" as to the Curry litigation – she never returned a class member claim and did not seek to utilize the Redress Fund – and, therefore, never purposefully availed herself of the forum in Massachusetts or Utah.  Plaintiff contends that because she lacks minimum contacts with either state, it offends due process and "traditional notions of fair play and substantial justice" for any

court to require her to litigate, in either state, issues arising in and otherwise properly venued in Ohio.

Plaintiff also asserts that she is no longer bound by the Curry Settlement Agreement or the Final Order because Defendants breached the relief provisions, specifically the "Reverse and Reimburse" remedy.

First of all, Plaintiff's argument that she did not waive the fundamental rights to the minimum contacts requirement – such that she cannot be bound to bring suit in Massachusetts or Utah – is without merit. The Supreme Court has held that because fewer burdens are placed on absent class plaintiffs than on absent defendants in non-class suits, the Due Process Clause need not and does not afford the former as much protection from court jurisdiction as it does the latter. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807-13 (1985) (rejecting the argument that the minimum contacts requirement used for out-of-state defendants should also apply to absent class action plaintiffs). The *Phillips* court went on to explain the jurisdiction a state can exercise over a class-plaintiff:

> A forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant. If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court.

*Id.*

In this case, because Plaintiff received notice that provided her with an opportunity to be heard, participate in litigation, and opt out of the proceedings, Plaintiff's fundamental due process rights were in no way offended.

Secondly, as to the Curry Injunction within the Final Order, "[i]t is well established that 'a court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement.'" *Brown v. County of Genesee*, 872 F.2d 169, 173 (6th Cir.1989) (quoting *Brock v. Scheuner*, 841 F.2d 151, 154 (6th Cir.1988)). In addition, the long-standing principles of *res judicata* act as a bar to a subsequent action between the same parties or their privies based upon the same claims or causes of action that were or could have been raised in a prior action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, (1981); *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir.1995). Under this Circuit's articulation of *res judicata*, a claim will be barred by prior litigation if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 880 (6th Cir. 1997). Because all of the *res judicata* elements are present in this case, this Court will enforce the Curry Injunction.

As a threshold matter, the Curry Class Action, resulting in the injunctive relief at issue here, was adjudicated before the United States District Court for the District of Massachusetts, which is decidedly a court of competent jurisdiction. In addition, a permanent injunction issues as a final judgment after a determination of the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 396 (1981).

Second, Defendants have provided evidence that Plaintiff was a member of the Curry Class Action; therefore, this action involves the same parties as the Curry Class Action.[5] The defined class, certified in the Curry Final Order, includes persons other than "excluded persons" whose loans were serviced at any time from January 1, 1999 to December 19, 2004 and whose loans were in default or treated as being in default by Fairbanks, and thereby incurred late fees. The Curry Class also included persons who were affected by "Default-Related" conduct within the relevant time period, including any and all acts taken by Defendant with respect to a serviced loan in default or treated as treated as in default and all acts taken to assess improper force-placed hazard insurance premiums. Plaintiff complains of exactly such misconduct, which occurred between July 2000 and April 2003, squarely within the Curry Class Period.

Additionally, Plaintiff presents no evidence that she attempted to opt out of the Curry Class, or that she never received the notice form. Plaintiff does argue, however, that the because the Class Notice did not warn absent members of the jurisdictional or forum limitations Defendants now seek to enforce, notice was not constitutionally adequate, such that she should not be bound to the Settlement Agreement.

The Federal Rules of Civil Procedure provide the standard for class action notices:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:
> • the nature of the action,

---

[5] In fact, Plaintiff never really disputes the assertion that she is a Class Member; rather, she claims, in her Response in Opposition, that she is not bound by the Curry Settlement Agreement because: (1) Defendants breached their obligations under the Agreement, and (2) Plaintiff did not adequately waive her rights because the notice received did not include the jurisdictional limitations of the Agreement.

> • the definition of the class certified,
> • the class claims, issues, or defenses,
> • that a class member may enter an appearance through counsel if the member so desires,
> • that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
> • the binding effect of a class judgment on class members under Rule 23(c)(3).

In addition, Rule 23(e) requires that class members be given reasonable notice of a proposed settlement. The notice must be sufficiently detailed to permit class members to determine the potential costs and benefits involved, although class member are not expected to rely on the notice as a complete source of settlement information and may have sufficient notice to allow them to investigate further. *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1126 (9th Cir. 1977) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974)).

In this case, the fact that the Curry Class Notice did not specifically mention the jurisdictional limitations does not render the *notice* inadequate. The Class Notice described the subject matter of the lawsuit, explained why the proposed class member was receiving the form, and delineated the different relief options available. The Class Notice also explained to proposed class members how they could exclude themselves from the class, and the consequences stemming therefrom. Indeed, the Class Notice provided for all of the items delineated in Fed. R. Civ. P. 23, and the Curry Final Order that approved the Settlement Agreement specifically states that "[t]he Court finds that notice was previously given to all members of the Class in the Curry action and that the notice was the best notice practicable under the circumstances and satisfies the requirements of due process and Fed. R. Civ. P. 23(c)." Plaintiff's argument that she should not be bound as a Class Member due to constitutional inadequacies of the Class Notice is, therefore, without merit.

Third, the allegations contained in March's complaint are the same allegations addressed and remedied by the Curry Class Action. The gravamen of Plaintiff's Complaint is that SPS improperly charged her for forced-placed insurance in connection with her Mortgage Loan and misallocated payments to cover the insurance charge and accruing late fees, causing Plaintiff to wrongly obtain a "delinquent" status. The act of charging for forced-placed insurance on Plaintiff's Mortgage Loan is conduct that falls within the scope of the Curry Settlement Agreement, and Plaintiff offers no evidence to the contrary.[6]

Finally, the Curry Class Action adjudicated the same issues and/or claims and as such, there is an identity of the causes of action that Plaintiff March raised before this Court. In addition to the "Covered Practices" section of the Settlement Agreement, which includes the act of assessing charges for force-placed insurance, the alleged default treatment of Plaintiff's Mortgage Loan, including the mailing of delinquent notices, statements, and other information altogether mimics the issues that the Curry Settlement Agreement resolved with the Curry Class members.

Because: (1) the Curry Class Action resulted in a final decision on the merits by a court of competent jurisdiction; (2) the present action is a subsequent action between the same parties; (3) the issues in this action were litigated in the Curry Class Action; and (4) there is an identity of the causes of action in this suit and the Curry Class Action, this Court finds that March's

---

[6] If Plaintiff brought a breach of contract claim based on Defendants' alleged breach of the Curry Settlement Agreement, the Court would may not have enjoined the action because the Curry Injunction permits actions to *implement any settlement* involving a Class Member. Plaintiff's complaint in current action, however, is wholly based on the conduct underlying the Curry Class Action, and not on actions arising from compliance with the Settlement Agreement.

claims were previously addressed by the Massachusetts District Court and are now barred by the longstanding judicial principles of *res judicata*.  Plaintiff is, therefore, prohibited from maintaining this suit due to the Curry Injunction set forth in the Curry Final Order and, as a matter of law, Defendants' Motion for Summary Judgment is **GRANTED**.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

                s/Algenon L. Marbley
                **ALGENON L. MARBLEY**
                **UNITED STATES DISTRICT JUDGE**

**DATED:  March 27, 2007**